Thank you. Good morning, your honors. I'm John Hayes, Haight, Brown and Bonesteel, for the appellant, Sutherland Presses. Sutherland is the seller. I really only have a few comments, and they're basically policy comments. The briefs pretty much state the issues. Sutherland is a seller of a really large piece of equipment. As part of the sale, it retained a security interest in the equipment. It's a purchase money secured creditor. Nobody doubts that. That means it's first. We win, that's that. What Fleet, the appellee, their argument is, wait a minute, we're also a purchase money secured creditor, therefore we're also first. The issue is, how can two different people both be first? Their argument is, first in time, first in line. To perfect, yes. If both sides are purchase money secured creditors. The first argument is, is that they're not purchase money secured creditor. They're simply a secured creditor. They have a lien on that piece of equipment. There's no doubt about that. Is it a purchase money lien? If it is, then they are purchase money. Then the question becomes, who should be first when both sides are first? The code doesn't say what do you do when both sides are first. So the question, the most important question really is, is are they purchase money secured? Because they agree that we are. They say we are because the code says your purchase money, if you have advanced money, to acquire rights in the collateral. They say we advanced money to acquire rights. What rights? What rights did the debtor enterprise acquire? Fleet says we gave the debtor money so it could acquire rights. And it says in its brief what the rights were. The rights were delivery, use, and possession. What happened is, in September, the debtor bought the equipment. There's a contract, an enforceable contract, there's no doubt about that. About six months later, Fleet put up some of the money to make some of the down payment. A few months after that, the equipment was actually delivered. The purchase price was a million? Yes. How much did Fleet put up? Fleet put up $600,000. About five months after the contract was entered into. The contract was there, money was required to be put up before the equipment was shipped over here from the Orient. At the time they put up the money, this is really the whole thing, at the time Fleet put up the money, they gave the money to the buyer didn't acquire any additional rights. I go to a car dealership and I find a Ferrari I like for $100,000 and I tell the car dealership that I've talked to my bank and they'll only give me $60,000 by way of a loan and they say not to worry we'll lend you the other $40,000. So I get $40,000 from my bank and $40,000 from the dealership and the bank records first, the dealership records second. Right. Who wins? I think the entity that recorded first. And why is that different than this situation? Because in this case the contract was done, the sale was made, everybody signed everything on day one. It doesn't really matter whether the sale was made that day. The Fleet, the lender, didn't come in until five months later when a second payment was required to be made. Product wouldn't have been shipped but for that price? Well that's speculation really. I mean the reality is you don't hand over a piece of equipment where you're supposed to get a $600,000 payment without getting the payment and that's what the testimony was. But they did hand over the equipment without getting the third payment which was only $100,000 and was a lot smaller. They did ship the payment was made even though they didn't have to. It's something that would have been worked out probably but that's not, I mean it can't be that a right that's obtained is, in fact the argument is that the right that's obtained is the economic reality of the transaction changed. The bankruptcy trial court concluded that Fleet had a PNC right? I'm sorry had a what? The bankruptcy trial court concluded that Fleet had a PNC. They purchased money security interest right? Yes. Is that a fact question or a mixed question? I would say it's a fact question. If the payment was made to allow the buyer to acquire rights in the collateral then they would be. And isn't that what the bankruptcy trial court concluded? Yes. What's wrong with that? That the trial court is wrong. That the rights that were acquired. Why are they wrong? The trial court said the rights that were acquired, in fact the trial court said the rights that were acquired were that Sutherland, us, lost its right to stop the shipment. Under the Uniform Commercial Code we could have stopped the shipment. Once the payment was made we couldn't stop the shipment anymore. I mean you agree if you've both got purchased money security interest, PNCs? Yes. No, no, no, no, our position is. If you both have PNCs, then they win. No, no, actually that's the second part of what I wanted to talk about for a few minutes. Okay. You don't agree? I actually will. I won't argue with you about that. The second part of the argument actually is. Going, I guess expanding a little bit on your first part, the statute says that you get the purchased money interest if it's taken by a person who by making advances or incurring an obligation gives value to the debtor to acquire rights in or the use of collateral. Now aren't we talking here about the use of? In other words, that the second payment was necessary to get the equipment into the hands of the debtor so that the debtor could use it. So the statute itself seems to imply that you can have two people at separate points in the stream of commerce having a purchased money interest. The response to that is, actually on my way up here yesterday I was reading this Harvard Law Review article by Mr. Gilmore, Professor Gilmore that Fleet cited called Purchased Money Security Interest. And he talked, he highlights the fact that it's ownership rights. And he made the comment that or the use of meant that the drafters contemplated that there would be purchased money security interest in leases, in possession, where really the only thing being transferred is possession. And he made the comment that that was kind of weird. The article was written in 1963, that that was kind of weird. He didn't really know how that was going to work. But it was ownership rights. In fact, a couple other places in the article he talks about money advanced to acquire the collateral. And he talked about, well, it does say rights. It means ownership rights or possession if it's a lease. I don't think the draftsman meant that. And still, it's by making a payment, by doing what you said you'd do, if there were 10 things that had to be done before the equipment would be actually turned over, by doing one of those, I guess sort of, I mean, philosophically, you could say, well, they've acquired rights because they didn't breach. They're not in trouble because they did what they said they could do. I mean, the rights sort of increased, I guess. But if I could just for one minute, yes, this has been, and by the way, you know, Article 9 has been changed substantially, actually, about a year and a half ago. And the BAP pointed out that were we proceeding under the new code, Sutherland would clearly win. I think that's important to show that the draftsman knew that there was this mistake. The code was designed to protect sellers who financed their property. If the BAP is right, no seller of equipment, who is interested in financing, who is willing to finance part of the purchase price, could ever sell to a large company that already has a purchase money, I mean, I'm sorry, a blanket lien agreement with a lender. In other words, any manufacturer... They don't have subordination agreements anymore? You know, you certainly could have a subordination agreement, and the buyer, the seller, could say, look, we're not going to sell you this equipment on time unless you prove to us where you got the money. And you prove to us that whoever you're getting the money from is not going to be ahead of us. And that can't be what the code meant. I just don't think there's any doubt that the whole purchase money concept was to protect sellers who are financing their property. All right. Thank you. Take into account when we review this case the fact that your reputation scared your opponent so badly that he didn't bother to show up. Thank you. Thank you. Case just arguably submitted and the court will be in recess for two minutes.
judges: Hill, Tg Nelson, Hawkins